**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TIMOTHY J. RIZZO,**

                      **Plaintiff,**

  vs.                                           **6:15-cv-557**
                                                **(MAD/ATB)**

**APPLIED MATERIALS, INC.; and**
**GLOBALFOUNDRIES, U.S., INC.,**

                      **Defendants.**
_____

**APPEARANCES:**                             **OF COUNSEL:**

**TIMOTHY J. RIZZO**
272 County Highway 107
Johnstown, New York 12095
Plaintiff, *pro se*

**LEWIS, BRISBOIS LAW FIRM**          **BERJ K. PARSEGHIAN, ESQ.**
New York Office                         **PHILIP J. O'ROURKE, ESQ.**
77 Water Street - Suite 2100
New York, New York 10005
Attorneys for Defendant
Applied Materials, Inc.

**JONES, DAY LAW FIRM**                 **ERIC P. STEPHENS, ESQ.**
New York Office                           **SHARYL A. REISMAN, ESQ.**
222 East 41st Street                       **TRACI L. LOVITT, ESQ.**
New York, New York 10017
Attorneys for Defendant
GlobalFoundries U.S., Inc.

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff Timothy J. Rizzo ("Plaintiff") commenced this action on April 30, 2015, and filed an amended complaint on July 29, 2015 asserting eleven causes of action and seeking at least $75,000 in compensatory and punitive damages. *See* Dkt. No. 35. Currently before the Court is

Defendant GlobalFoundries, U.S., Inc.'s ("GlobalFoundries") motion to dismiss Counts III, IV, V, and VII of Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 38.

## II. BACKGROUND

Plaintiff is 39 years old and has been employed at AM Technical Solutions as a construction manager for tool install since April of 2012. Dkt. No. 35 at ¶ 47. On or about May 2, 2012, Plaintiff was assigned to GlobalFoundries' Fab 8 facility in Malta, New York to work in construction management overseeing the construction of factories for that facility. *Id.* at ¶¶ 48-49. On August 2, 2012, while Plaintiff was working in the chemical metal plating room at the Fab 8 facility, a manufacturing tool labeled as POL2700 allegedly malfunctioned and exposed him to toxic and hazardous substances, which were identified as "Slurry 1" and "Slurry 2." *Id.* at 50. Plaintiff also claims that he was also exposed on a chronic basis to "toxic and hazardous substances, including but not limited to arsenic emanating from a malfunctioning Viista Trident Current Implanter and/or Viista Trident Medium Current Implanter." *Id.* at ¶ 53. The identified POL2700 tool and the Viista Trident Current Implanters were "designed, manufactured, sold, and/or distributed" by Defendant Applied Materials, Inc. ("Applied"). *Id.* at ¶ 24. Plaintiff further contends that he was exposed to numerous other toxic substances while working at the Fab 8 facility from May through August of 2012. *Id.* at ¶ 54. At some point after the August 2, 2012 incident, Plaintiff developed an autoimmune disease diagnosed as c-ANCA positive Wegener's Granulomatosis. *Id.* at ¶ 67. Plaintiff has suffered numerous physical and emotional ailments since this time and has undergone "extensive chemotherapy, plasmapheresis, and steroid therapy." *Id.* at ¶¶ 68, 69.

## III. DISCUSSION

### A. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *Id.* at 570.

### B. Counts III, IV, & V

Counts III, IV, and V of Plaintiff's amended complaint assert claims of strict products liability, breach of express warranty, and breach of implied warranty, respectively, against GlobalFoundries. *See* Dkt. No. 35 at ¶¶ 97-114. Pursuant to the Court's diversity of citizenship jurisdiction, New York substantive law applies to Plaintiff's products liability and breach of warranty causes of action. *See Marks v. Abbot Labs. & Co.*, No. 11-CV-4147, 2012 WL 1004892, *3 (E.D.N.Y. Jan. 11, 2012) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

New York plaintiffs seeking to recover for injuries sustained by allegedly defective or dangerous products "may base a suit on one or more of four theories: negligence, breach of express warranty, breach of implied warranty, or strict liability." N.Y. Pattern Jury Instr. – Civil Div. 2 G 3 Intro. § 1 [hereinafter N.Y. P.J.I.] (citing *Denny v. Ford Motor Co.*, 87 N.Y.2d 248 (1995)) (other citations omitted). While each of these claims varies slightly in its application, "there can be 'a high degree of overlap between the substantive aspects' of the [products liability] causes of action." *Monell v. Scooter Store, Ltd.*, 895 F. Supp. 2d 398, 411 (N.D.N.Y. 2012) (quoting *Denny*, 87 N.Y.2d at 256). One common element to any products liability claim is that the plaintiff's alleged injury must have been caused by a product that the defendant sold or placed into the stream of commerce. *See Healy v. Firestone Tire & Rubber Co.*, 87 N.Y.2d 596, 601 (1996).

New York courts considering strict products liability claims have repeatedly held that a defendant is only liable if it placed the allegedly defective and injury-producing product into the stream of commerce. *See id.* ("[O]ne of the necessary elements plaintiff in a strict products liability causes of action must establish by competent proof is that it was the defendant who manufactured and placed in the stream of commerce the injury-causing defective product"); *see also* N.Y. P.J.I. § V ("As a general rule, plaintiff is required to establish that defendant

4

manufactured the product in question and placed it in the stream of commerce"); *Gebo v. Black Clawson Co.*, 92 N.Y.2d 387, 392 (1998) (holding that a defendant that designed, assembled and installed a modification to a product for its own use, not for market sale, is not subject to strict liability). Thus, the pool of potential defendants in a strict products liability case includes "any[]one responsible for placing the defective product in the marketplace." *Brumbaugh v. CEJJ, Inc.*, 152 A.D.2d 69, 72 (3d Dep't 1989) (citations omitted); *see also Van Iderstine v. Lane Pipe Corp.* 89 A.D.2d 459, 461 (4th Dep't 1982) ("The [strict products liability] rule is intended to protect persons injured by defective products placed in the stream of commerce" (citing Restatement, Torts 2d, § 402 A, comments c, f)).

Likewise, a breach of warranty action "generally requires the sale of a product unless some other duty is imposed by contract." N.Y. P.J.I. § III(E)(1). Plaintiff asserts that he need not "allege[] that he purchased the product(s) at issue [because] warranty liability, express or implied, does not depend on plaintiff being in privity with defendant, or even being a purchaser." Dkt. No. 57 at 12. To support this argument, Plaintiff cites New York's Uniform Commercial Code ("U.C.C.") § 2-318, which he claims stands for the proposition that "warranties, whether express or implied, run to '*any* natural person if it is reasonable to expect that such person may *use, consume or be affected* by the goods and who is injured in person by breach of the warranty.'" *Id.* at 11. However, Plaintiff's argument is entirely misplaced as he failed to reference the first portion of section 2-318, which explicitly refers to "[a] *seller's* warranty . . . ." N.Y. U.C.C. § 2-318 (emphasis added). Further, section 2-102 states that Article 2 of the U.C.C. shall apply only "to transactions in goods." *Id.* at § 2-102. Thus, in order for a plaintiff to recover under a breach of warranty claim, the injury-causing product must have, at some point, been sold or transferred by the defendant to another party.

5

In this case, Plaintiff's amended complaint lacks any plausible allegation that he was injured by a product or good that GlobalFoundaries had sold or placed into the stream of commerce. Plaintiff's products liability claims against GlobalFoundaries are based upon his alleged injuries sustained when he "experienced chronic and aggregate exposures to toxic and hazardous substances while on site at Fab 8 . . . ." Dkt. No. 35 at ¶ 54. Plaintiff alleges that "[u]pon information and belief, at all relevant times, the aforementioned chemicals and substances were manufactured, designed, sold, distributed or used in electronics manufacturing by Defendants . . . ." Dkt. No. 35 at ¶ 55. Further, Plaintiff alleges that "[t]he law implies a warranty by [GlobalFoundries], as designer[], manufacturer[], mixer[], and seller[] of the aforesaid chemicals, radiation, and substances on the market, that the chemicals, radiation, and substances were reasonably fit for the ordinary purposes for which they w[ere] used." *Id.* at ¶ 111. The parties debate whether these allegations are sufficient to support Plaintiff's claim that GlobalFoundries uses these chemicals as components in the semiconductors that it manufactures and eventually sells. *See* Dkt. No 57 at 7-9; Dkt. No. 58 at 6-10. However, the Court need not determine this specific question on the instant motion because it is undisputed that any injuries Plaintiff sustained from GlobalFoundries' products occurred prior to those products being sold or placed on the market.

The only allegation of harm attributable to a GlobalFoundries product is that the chemicals used in its Fab 8 plant caused or contributed to Plaintiff's injuries. Dkt. No. 35 at ¶ 54. Regardless of whether these chemicals were ultimately sold in components manufactured by GlobalFoundaries, Plaintiff was not injured by the components after they had been manufactured and placed into the stream of commerce. Rather, Plaintiff was allegedly injured by these chemicals while working at GlobalFoundries' Fab 8 facility, prior to any sale, distribution, or

6

transaction involving the chemicals. Specifically, Plaintiff's claim for relief alleges that GlobalFoundries is "strictly liable for the defective, unsafe and unreasonably dangerous design, manufacture, production, mixture and/or use of the aforesaid chemicals and substances *as used in their tools, facility and premises*." Dkt. No. 35 at ¶ 98 (emphasis added). Thus, there has clearly been no transaction in the specific good that caused Plaintiff's injuries that would subject GlobalFoundries to warranty liability, either express or implied, under Article 2 of the UCC. Further, any contact that Plaintiff had with the allegedly harmful chemicals occurred during the construction process of the Fab 8 facility. Thus, his injuries were not caused by a product that GlobalFoundries placed into the stream of commerce, which removes this claim from the scope of strict products liability. Accordingly, GloablFoundries' motion to dismiss Counts III, IV, and V of Plaintiff's amended complaint is granted.

**C.     Count VII**

Count VII of Plaintiff's amended complaint asserts a cause of action for the willful and wanton misconduct of GlobalFoundries. *See* Dkt. No. 35 at ¶¶ 120-133. However, New York law does not recognize willful and wanton misconduct as a standalone cause of action. *See Convergia Networks, Inc. v. Huawei Techs. Co., Ltd.*, No. 06 Civ. 6191, 2008 WL 4787503, *3 (S.D.N.Y. Oct. 30, 2008) (citing *Abbetiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 543 (S.D.N.Y. 2007)); *see also Racanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 616 (1994) (noting that a demand for punitive damages cannot be its own cause of action, but rather must attach to a substantive claim that allows such damages). Accordingly, GlobalFoundries' motion to dismiss Count VII of Plaintiff's amended complaint is granted.[1]

---

[1] The Court notes that Plaintiff's request for punitive damages is not dismissed as he still has the right to request such damages in connection with his remaining substantive causes of

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant GlobalFoundries' motion to dismiss (Dkt. No. 38) is **GRANTED** in its entirety; and the Court further

**ORDERS** that Counts III, IV, V, and VII of Plaintiff's amended complaint (Dkt. No. 35) are **DISMISSED**, and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 22, 2016
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

action. The allegations set forth in paragraphs 120-133 of the amended complaint are sufficient to support his request for punitive damages at the motion to dismiss stage, notwithstanding the dismissal of Count VII.